UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEITH LAVON COOPER, JR.,

        Plaintiff,

v.                           Case No. 3:19-cv-309-J-39MCR

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.

        Defendants.
_____

**ORDER**

**I. Status**

Plaintiff, Keith Lavon Cooper, Jr., is proceeding on a third amended complaint (Doc. 34; TAC), filed by private counsel. All served Defendants have moved to dismiss the complaint (Docs. 44, 57, 60, 71).[1]

**II. Motion to Dismiss Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[1] Plaintiff and Defendant Baker County filed a joint stipulation for dismissal with prejudice of Defendant Baker County (Doc. 59).

liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Gill, 2019 WL 5304078, at *2 (quoting Iqbal, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. See Iqbal, 556 U.S. at 678.

### III. Complaint Allegations

Plaintiff's claims arise out of an incident that occurred on April 30, 2015, at the Baker Correctional Center (the work camp). See TAC ¶¶ 40, 59, 72. According to Plaintiff, up to twenty-two other inmates, who were associated with a prison gang called the "Cutthroats," were impermissibly granted access to Plaintiff's housing unit and beat him to unconsciousness inside his cell while corrections officers watched. Id. ¶¶ 51, 71-75. Plaintiff alleges the gang-member inmates attacked him as retribution for falling

2

behind on extortion payments demanded by the head of the Cutthroats, the "Terrorizer."[2] Id. ¶¶ 51-55.

Plaintiff alleges he avoided other attempted gang attacks prior to the one that is the subject of his complaint. One day in April, a gang-member inmate attempted to strike Plaintiff with a lock in a sock, but Plaintiff was able to defend himself. Id. ¶¶ 56, 57. Later in the week, Plaintiff avoided an attack by three gang members. Id. ¶ 58. On the day of the attack that is the subject of the complaint, four gang members surrounded Plaintiff in the yard, but Plaintiff "was able to fight [them] off." Id. ¶¶ 60, 61, 64. Plaintiff alleges the officer-Defendants "were within the vicinity, could observe the attack [in the yard], and did nothing." Id. ¶ 62. The subject attack occurred shortly after the incident in the yard, after officers allowed the gang-member inmates to enter his housing unit even though they were not residents of that unit and should not have gained access. Id. ¶¶ 66-70. The gang-member inmates entered with weapons, "including locks, a plexiglass knife, and an ice pick." Id. ¶ 70.

After the attack, Plaintiff was air-lifted to Shands Hospital. Id. ¶ 89. He was discharged the following day. Id. ¶ 90.

---

[2] Plaintiff spells this inmate's nickname as both "Terrorizer" and "Terrorizor." See TAC ¶¶ 51, 52. The Court will use the former, correct spelling.

Plaintiff sustained "brain trauma, including 4mm of brain hemorrhaging and a right partial fracture of his skull." Id. ¶ 91. Upon his return to Baker Correctional, Plaintiff was housed in the medical unit, though he did not see a doctor for three days. Id. ¶¶ 92-94. At that time, the Baker Correctional doctor ordered Plaintiff's transfer to Taylor Correctional Institution (TCI). Id. ¶ 94. Plaintiff's medical records were not transported with him, and officials at TCI placed Plaintiff in solitary confinement despite his physical condition and inability to walk. Id. ¶ 95-97. Officers at TCI "threatened [Plaintiff] in an attempt to get him to walk or move," which caused Plaintiff to urinate on himself. Id. ¶¶ 98, 99. When Plaintiff requested medical attention, he was taken to the infirmary. Id. ¶¶ 101, 102.

About three weeks later, Plaintiff had an MRI at Tallahassee Memorial Hospital, and he was told "to see a neurologist in 2 days." Id. ¶ 103. Plaintiff was subsequently sent back to TCI where he remained for weeks without seeing a neurologist. Id. ¶ 104. A second MRI was completed at the Reception and Medical Center, which revealed Plaintiff had a pinched nerve or swelling in his brain. Id. ¶ 105. Plaintiff alleges he developed cysts and bed sores, and due to the alleged inadequate medical care, his "injuries [from the attack] were exacerbated, took longer to heal, and became more complicated." Id. ¶ 106, 107. Plaintiff attributes the following injuries to the attack:

4

> hand, arm and leg pain, lacerations to his
> head, deformity to his eyebrow, multiple stab
> wounds to his arm and head, bruising and
> injury to his rib cage and upper back,
> abrasions to his legs, nasal bone fracture
> requiring surgery, paralysis of his legs and
> lower extremities requiring physical therapy,
> numbness in his lower extremities, headaches,
> complications with his eyesight including
> blurred vision and a parietal fracture, brain
> trauma, and the inability to be mobile without
> a wheelchair.

Id. ¶115.

Plaintiff sues the Florida Department of Corrections (FDOC), ten officers of different rank, the Warden of Baker Correctional, and the contract medical provider for the FDOC, Corizon Health, Inc. In Count I, Plaintiff alleges the officer-Defendants and Warden Freeman were deliberately indifferent to a serious risk of bodily harm. Id. ¶¶ 124-28. Plaintiff alleges the officers' and Warden's "failure to stop or take action to stop the unlawful assaults, attacks, injuries, and abuse constituted deliberate indifference to the known and obvious consequences of violating Plaintiff's constitutional rights and causing him great bodily injury." Id. ¶ 129.

Plaintiff asserts Defendants (as a group) failed to take measures to ensure Plaintiff's safety and failed to intervene during the attack. Id. ¶131. Additionally, Plaintiff alleges the following acts or omissions contributed to the attack: failing to protect inmates generally and Plaintiff in particular from gang

violence; failing to check identification before inmates enter housing units and permitting inmates to enter units in which they do not reside; failing to check inmates for weapons; failing to intervene during inmate-on-inmate violence; and failing to "inform guards or take any precautionary action after observing gangmembers [sic] attack an inmate." Id.

In Count II, Plaintiff alleges all Defendants were deliberately indifferent to Plaintiff's serious medical needs by (1) delaying needed treatment for up to three days at Baker Correctional and (2) failing to send Plaintiff's medical records to TCI, which resulted in additional delays in receiving treatment. Id. ¶¶ 140-42, 145, 146.

In Count III, Plaintiff alleges the officer-Defendants and Warden Freeman were deliberately indifferent to a serious risk of harm by the acts and omissions referenced in Count I, including allowing unregistered inmates access to Plaintiff's housing unit with weapons knowing the inmates planned to attack Plaintiff.

In Count IV, Plaintiff alleges the FDOC maintained "customs, practices, and/or policies," and "acted with deliberate indifference to the foreseeable effects" of those customs, practices, and policies. Id. ¶¶ 168, 170.

## IV. Analysis

### A. The FDOC's Motion

The FDOC seeks dismissal of the sole Count against it, Count IV, asserting the FDOC is not a "person" amenable to suit under § 1983 and the Eleventh Amendment bars the claim (Doc. 44; FDOC Motion). In response (Doc. 46; Pl. FDOC Resp.), Plaintiff contends the FDOC fails to demonstrate "whether the State of Florida structured the FDOC meaning for it to be under the immunity Florida enjoys." Pl. FDOC Resp. at 4.

Plaintiff's argument is unconvincing. The state of Florida and agencies of the state, including the FDOC, are not persons under § 1983 subject to monetary liability. See Gardner v. Riska, 444 F. App'x 353, 355 (11th Cir. 2011) (quoting Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir.1995)). See also Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Accordingly, the FDOC is due to be dismissed.

### B. Corizon's Motion

Corizon seeks dismissal on the ground that Plaintiff fails to allege facts demonstrating a causal connection between Plaintiff's injuries and any action or inaction by Corizon (Doc. 57; Corizon Motion). Specifically, Corizon maintains Plaintiff does not identify a Corizon employee who was deliberately indifferent to

Plaintiff's serious medical needs and does not identify a custom, policy, or practice of Corizon's that caused Plaintiff harm. Corizon Motion at 7, 10. Corizon also asserts Plaintiff's complaint is facially deficient as a "shotgun" pleading because Plaintiff "lumps the Defendants together" and does not specify what acts or omissions of each Defendant caused Plaintiff's injuries. Id. at 2-4.

In response (Doc. 58; Pl. Corizon Resp.), Plaintiff contends he states a claim for deliberate indifference against Corizon because he alleges his medical care at Baker Correctional was delayed for three days, and he was sent to TCI without medical documentation, resulting in additional treatment delays. Pl. Corizon Resp. at 3-4, 6-7. Plaintiff further says he alleges Corizon adopted a policy or custom of "failing to provide medical care to inmates" and failing to train employees to provide medical care and handle inmate transfers appropriately. Id. at 7.

Upon review, the Court finds Plaintiff fails to state a plausible claim for relief against Corizon because, contrary to Plaintiff's contention in his response, he does not identify in his complaint a policy or custom of Corizon's that resulted in delayed or inadequate medical treatment. See TAC ¶¶ 139-50. Rather, it appears Plaintiff names Corizon merely because it is the company that provides contract medical services for the FDOC. Even if an individual Corizon employee intentionally delayed providing

treatment for Plaintiff (which Plaintiff does not allege), a claim against Corizon cannot proceed upon a theory of respondeat superior. Supervisory officials, including private corporations like Corizon, cannot be held liable under § 1983 in the absence of allegations identifying a policy or custom that was the moving force behind a constitutional violation. See Ross v. Corizon Med. Servs., 700 F. App'x 914, 917 (11th Cir. 2017) (citing Craig v. Floyd Cty., 643 F.3d 1306, 1310 (11th Cir. 2011)). See also Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) ("It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." (internal quotation marks omitted)).

While systemic deficiencies in a prison health care's treatment protocol can suggest deliberate indifference, Plaintiff does not allege systemic deficiencies. His claim is premised solely on the adequacy of the care he received after the attack. See, e.g., Denham v. Corizon Health, Inc., 675 F. App'x 935, 944 (11th Cir. 2017) (holding the plaintiff failed to demonstrate municipal liability because her "claim that Corizon had a custom of providing inadequate medical care" was based solely on her own experiences, which constituted "at most, proof of a single incident of unconstitutional activity") (quoting Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1312 (11th Cir. 2011)).

9

Not only does Plaintiff fail to identify systemic deficiencies in Corizon's treatment protocol, he alleges he received immediate medical attention. According to Plaintiff, prison officials arranged for him to be air-lifted to the hospital and, upon his return to Baker Correctional, officials placed him in the medical unit where, presumably, he was under the care of medical professionals. That Plaintiff believes he should have seen a prison doctor immediately after he was released from the hospital does not, by itself, permit the inference that Corizon had a policy or custom of delaying medical care for inmates. See id. Cf. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705-06 (11th Cir. 1985) (holding the plaintiff stated a deliberate indifference claim against the municipality because he alleged the municipality "established or utilized a policy or custom requiring that inmates needing medical assistance obtain court orders," which resulted in a delay in necessary treatment).

In fact, Plaintiff's subjective belief that a doctor should have visited him sooner suggests a disagreement with medical treatment, not deliberate indifference. See Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 2007). Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in

tort law." (quoting with alteration <u>Westlake v. Lucas</u>, 537 F.2d
857, 860 n.5 (1st Cir. 1981))). While it certainly appears there
was a breakdown in communication when Plaintiff was sent to TCI
without records alerting officials to his medical condition,
Plaintiff asserts no facts suggesting such oversight was
attributable to a Corizon policy or custom. Indeed, he does not
even attribute the oversight to a Corizon employee. Accordingly,
Plaintiff fails to state a plausible claim for relief against
Corizon.

### C. The Officers' Motion

The officer-Defendants invoke qualified immunity for
Plaintiff's failure to state a claim against them (Doc. 60; Officer
Motion). They also argue Plaintiff fails to assert specific
allegations against each officer individually but rather asserts
general allegations against them collectively.[3] Officer Motion at
8-9.

In response (Doc. 61; Pl. Officer Resp.), Plaintiff argues
the officers are not entitled to qualified immunity because he

---

[3] The officer-Defendants also argue Plaintiff fails to "go
beyond typical notice pleading and meet a heightened pleading
standard." Officer Motion at 7. As articulated by the Supreme Court
in <u>Iqbal</u> and <u>Twombly</u>, notice-pleading is the standard. <u>See Iqbal</u>,
556 U.S. at 678-79; <u>Twombly</u>, 550 U.S. at 555. <u>See also Randall v.
Scott</u>, 610 F.3d 701, 709 (11th Cir. 2010) ("Pleadings for § 1983
cases involving defendants who are able to assert qualified
immunity as a defense shall now be held to comply with the
standards described in <u>Iqbal</u>.").

alleges the violation of a clearly established constitutional right under the Eighth Amendment (e.g., deliberate indifference). Pl. Officer Resp. at 6-7, 8.

Upon review, the Court finds Plaintiff fails to put the officers on notice of the claims against them and the factual basis for those claims. In his general allegations, Plaintiff says the officer-Defendants observed the attack from the security room and failed to stop it, which suggests he proceeds under a failure-to-intervene theory. Accepting these facts as true, Plaintiff states a claim against the officer-Defendants solely to the extent they observed an attack and failed to intervene. But it appears Plaintiff also seeks to advance a failure-to-protect theory of liability against the officer-Defendants based on events that preceded the attack or based on general conditions at the prison. Plaintiff's allegations as to what each officer knew and what each officer did, however, are unclear.

For instance, in Counts I and III, in addition to alleging the officers failed to intervene during the attack, Plaintiff lists a series of other acts or omissions against the officers as a group, which he contends demonstrates their "reckless disregard" for his safety: failing to protect inmates generally from prison gangs; failing to check identification before inmates enter housing units; affirmatively permitting unregistered inmates into housing units; failing to check inmates for weapons; and failing

12

to ensure inmates did not have access to items that could be used as weapons.[4]

Plaintiff attributes these acts or omissions to the officer-Defendants collectively; he makes no distinction between the officers. But whether a defendant had subjective knowledge of a risk of serious harm necessarily depends on what that defendant knew; "[i]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017). Thus, Plaintiff must allege not only that he faced a substantial risk of serious harm but also that the officer-Defendants, individually, not collectively, "subjectively knew of the substantial risk of serious harm and . . . knowingly or recklessly disregarded that risk." See Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (quoting Hale v. Tallapoosa Cty., 50 F.3d 1579, 1583 (11th Cir. 1995)).

Significantly, Plaintiff does not explicitly say the officers who observed the attack in his cell were the ones who permitted

---

[4] Moreover, in his response to the officer-Defendants' motion, Plaintiff says he "has pled that Defendant Officers had knowledge of his previous attack the week before," and Plaintiff cites case law suggesting he pursues a failure-to-protect theory. Pl. Officer Resp. at 7, 9 (emphasis added) (citing Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1324-25 (11th Cir. 2016). Nowhere in Plaintiff's complaint does he allege the officer-Defendants observed or otherwise had knowledge of an attempted attack the week before April 30, 2015.

the gang-member inmates to enter Plaintiff's housing unit knowing those inmates intended to harm Plaintiff. Even more, while Plaintiff certainly implies the officer-Defendants saw the failed attack in the yard just before the attack inside the cell occurred (saying the officers were "within the vicinity, [and] <u>could</u> observe the attack"), he does not affirmatively allege the officers did see the attack and, if they did, also permitted those same inmates to then impermissibly enter Plaintiff's housing unit with weapons in hand.

To the extent Plaintiff intends to premise his theory of liability on the notion that gang violence at Baker Correctional was rampant but ignored (i.e., Plaintiff alleges Defendants failed to "protect inmates from threats and coercion from prison gangs"), he references no other instances of gang violence aside from the few directed at him. He also does not allege the officer-Defendants knew the Terrorizer had been extorting payments from him or that gang-member inmates had threatened him when he fell behind on those payments.

Finally, as to Count II, Plaintiff fails to allege how each officer-Defendant, individually, failed or refused to obtain medical treatment for him. Plaintiff's assertion that the officers were deliberately indifferent to his serious medical need amounts to no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. Additionally, Plaintiff's

factual allegations belie his suggestion that his medical needs were ignored. He acknowledges he was immediately air-lifted to the hospital following the attack and, when he returned to Baker Correctional, he was housed in the medical unit.

Even assuming Plaintiff should have seen a doctor immediately when he returned to Baker Correctional, Plaintiff does not attribute the delay to any individual officer-Defendant. He also does not allege any officer-Defendant was responsible for sending his medical documentation to TCI but intentionally failed or refused to do so. And three days after his release from the hospital, Plaintiff was transferred to TCI. See TAC ¶ 94. The Baker Correctional officers cannot be held to account for any lapse in medical care that occurred after his transfer.

In light of the above, the Court finds Plaintiff's allegations against the officer-Defendants fail to put them on notice of the nature of the claims against them.[5] If the officer-Defendants are to be expected to answer the complaint, they must have notice of

---

[5] The lack of clarity of Plaintiff's claims and factual allegations is compounded by the fact that each Count incorporates all prior paragraphs, including those of the preceding Counts. Such practice generally is condemned as a "shotgun" approach to pleading. Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015) (describing the most common type of shotgun pleading as one in which "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint").

the claims against them and the factual allegations that form the basis of those claims.

### D. Warden Freeman's Motion

Warden Freeman contends any claim against him in his official capacity is barred under the Eleventh Amendment (Doc. 71; Warden Motion).[6] As to claims against him in his individual capacity, Warden Freeman notes Plaintiff asserts no allegations against him, and he invokes qualified immunity. Warden Motion at 7, 9-10, 12. In response (Doc. 72; Pl. Warden Resp.), Plaintiff first notes the motion is untimely because Warden Freeman filed it more than twenty-one days after he was served, and Plaintiff says the motion, therefore, should be stricken. Pl. Warden Resp. at 2, 6.[7] Additionally, Plaintiff asserts Warden Freeman is not entitled to qualified immunity because Plaintiff alleges Warden Freeman knew Plaintiff was in danger but failed to protect him. Id. at 7-8.

Contrary to Plaintiff's contention in his response, he does not allege Warden Freeman knew he was in danger and failed to

---

[6] Plaintiff clarifies he sues Warden Freeman solely in his individual capacity. See Pl. Warden Resp. at 5 n.1. Thus, Warden Freeman's motion is moot in this regard.

[7] Warden Freeman was served on October 2, 2019 (Doc. 52). He did not file his motion until May 4, 2020. Even though Warden Freeman's motion to dismiss is untimely, Plaintiff's request that it be stricken is not properly before the Court. See Fed. R. Civ. P. 7(b) (requiring requests for relief to be made by motion). Additionally, the Court notes Plaintiff did not move for default against Warden Freeman.

protect him. In fact, Plaintiff attributes absolutely no factual allegations to Warden Freeman. To the extent Plaintiff names the Warden solely because of the title he holds, Plaintiff fails to state a viable claim for relief under § 1983. See Cottone, 326 F.3d at 1360. Supervisor liability arises only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (quoting Cottone, 326 F.3d at 1360). See also Reid v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 848, 852 (11th Cir. 2012) (affirming summary judgment in favor of a defendant sued "only in his supervisory capacity" because the plaintiff asserted no allegations that the defendant participated in the action or that he was causally responsible for any violations).

Plaintiff alleges no facts demonstrating Warden Freeman personally participated in the alleged constitutional violations, nor does he allege facts otherwise demonstrating the requisite causal connection. Plaintiff's conclusory assertions do not suffice. See Tani v. Shelby Cty., Ala., 511 F. App'x 854, 857 (11th Cir. 2013) (affirming dismissal of a complaint that alleged, as labels and conclusions, violations of various constitutional rights with no supporting facts to "explain what actions caused which violations").

17

## V. Leave to Amend

Because Plaintiff fails to adequately set forth his claims against Corizon, the officer-Defendants, and Warden Freeman, their motions are due to be granted. However, in response to all motions, Plaintiff requests leave to amend his complaint. Pl. Corizon Resp. at 9; Pl. Officer Resp. at 12; Pl. Warden Resp. at 10. Accordingly, the Court will permit Plaintiff an opportunity to amend his complaint as to the claims against Corizon, the officers, and Warden Freeman. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002).[8] In amending his complaint, Plaintiff must cure the deficiencies noted in this Order, and he must satisfy federal pleading standards.

As to the officer-Defendants, Plaintiff must clarify whether he asserts solely a deliberate indifference claim for the officers' failure to intervene when they observed the April 30, 2015 attack, or whether he also asserts the officers knew he was at risk of being attacked by gang-member inmates and failed to take appropriate steps to protect him. If Plaintiff pursues the latter theory of liability, he must allege facts demonstrating each officer had subjective knowledge that Plaintiff faced a risk of serious harm and, in the face of such knowledge, failed to respond to the risk in an objectively reasonable manner. As to either

---

[8] Plaintiff may not amend his claim against the FDOC, however, because any such amendment would be futile.

18

theory, Plaintiff should omit extraneous factual allegations and avoid asserting mere conclusions devoid of factual support. If Plaintiff intends to pursue a claim against the officer-Defendants for deliberate indifference to his serious medical needs, he must allege facts respecting all material elements of such a claim. Conclusory assertions will not suffice.

As to Corizon and Warden Freeman, Plaintiff should assess the facts and law to determine whether he has a plausible basis upon which to proceed.

Accordingly, it is now

**ORDERED:**

1.     The FDOC's motion to dismiss Count IV of Plaintiff's Third Amended Complaint (Doc. 44) is **GRANTED.**

2.     Plaintiff's claims against the FDOC are **dismissed.** The **Clerk** is directed to terminate the FDOC as a Defendant.

3.     Corizon's motion to dismiss (Doc. 57) is **GRANTED** to the extent Plaintiff fails to state a claim for relief against Corizon.

4.     Defendants Massee, Sailee, Saylor, Doe TA, Bickerstaff, Burnett, Guitherman, Phillips, Stephen, and Powell's motion to dismiss (Doc. 60) is **GRANTED** to the extent Plaintiff fails to adequately set forth his claims against these Defendants.

5.     Warden Freeman's motion to dismiss (Doc. 71) is **GRANTED** to the extent Plaintiff fails to state a claim for relief against the Warden.

6.    Plaintiff's claims against Defendants Corizon, the officers, and Warden Freeman are **dismissed without prejudice** subject to his right to amend his complaint. Plaintiff shall submit an amended complaint within **twenty-one days** of the date of this Order. Plaintiff's failure to properly set forth his claims against any Defendant may result in the dismissal of those claims.

7.    Pursuant to the joint stipulation for dismissal (Doc. 59), Plaintiff's claims against Baker County are **dismissed with prejudice**. The **Clerk** is directed to terminate Baker County as a Defendant.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of July 2020.

_____
BRIAN J. DAVIS
United States District Judge


Jax-6
c:
Counsel of Record

20