UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEITH LAVON COOPER, JR.,

    Plaintiff,

v.

Case No. 3:19-cv-309-BJD-MCR

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.

    Defendants.
_____

## **ORDER**

### I. Background & Status

Before the Court are the following motions: (1) Corizon Health, Inc.'s motion for summary judgment (Doc. 105; Corizon Motion); (2) Defendants Massee, Sailee, Saylor, Bickerstaff, Burnett, Guitherman, Phillips, Stephen, and Powell's motion for summary judgment (Doc. 107); and (3) Plaintiff's motion to extend the deadlines, joined by Defendants Freeman, Massee, Sailee, Saylor, Bickerstaff, Burnett, Guitherman, Phillips, Stephen, and Powell (Doc. 113).

The Court previously directed Plaintiff to respond to Defendants' motions for summary judgment by May 20, 2021. See Order (Doc. 111). The Court warned Plaintiff his failure to do so would result in the Court treating

the motions as unopposed. See Order (Doc. 111) (citing M.D. Fla. R. 3.01(c)). Plaintiff's counsel, Rodney Gregory, thereafter filed two documents in which he requests more time for discovery and to file motions for summary judgment.[1] See Motions (Docs. 113, 114). Mr. Gregory asserts he is still awaiting discovery responses from all Defendants, which he needs to properly respond to any dispositive motions. All Defendants except Corizon join the motion to extend the deadlines (Doc. 113).

On June 23, 2021, the Court held a status conference because Mr. Gregory failed to respond to the pending motions for summary judgment as directed and instead requested an extension of the deadlines (most of which have already passed); all parties except Corizon indicate they need more time to complete discovery, but dispositive motions have been filed and the case is set for trial on November 1, 2021; and Mr. Gregory indicates he intends to withdraw as Plaintiff's counsel.

At the status conference, counsel for Defendant Warden Freeman agreed to an extension of the deadlines in part because counsel wants to retain an expert. Counsel for the officers represented the officers do not need to retain an expert and are ready to proceed to trial if the Court denies their motion for

---

[1] Mr. Gregory represents by title of the second filing (Doc. 114) that it is also meant to be a response to Corizon's motion for summary judgment. It is not.

summary judgment. However, counsel clarified the officers do not oppose extending the deadlines. Corizon's attorney, on the other hand, represented Corizon has responded to all Plaintiff's discovery requests and met all case management deadlines and contends extending the deadlines at this point would prejudice Corizon.

Mr. Gregory conceded the case has been mis-managed. He explained there was a delay scheduling depositions because Plaintiff sustained a serious injury in October or November; he (Mr. Gregory) was suspended from the practice of law for sixty days in late 2020; the law firm primarily responsible for the case withdrew during Mr. Gregory's suspension; and the assigned mediator was unable to schedule a mediation within the deadline set by the Court. During Mr. Gregory's sixty-day suspension, another attorney, Gerald Bernard Stewart, agreed to serve as counsel of record for appearances only. According to Mr. Gregory, Mr. Stewart's sole role was that of a placeholder; Mr. Stewart was not responsible for the case.

The circumstances Mr. Gregory describes are concerning. Mr. Gregory essentially allowed the case to remain dormant while he was suspended, which undoubtedly played a role in his failure to meet case management deadlines, including disclosing expert reports and taking depositions. Additionally, Mr. Gregory's unfamiliarity with the Court's Local Rules impeded him from timely

3

and properly seeking extensions of the deadlines.[2] Corizon should not have to suffer the consequences of Mr. Gregory's professional missteps, especially after the Court cautioned all parties in November 2020, that it expected them to "adhere to the amended deadlines," see Order (Doc. 87), and recently cautioned Mr. Gregory that his continued failure to comply with the Court's Local Rules may result in sanctions, see Order (Doc. 111).

Accordingly, upon due consideration of the parties' positions, the procedural posture of the case, and Mr. Gregory's failure to meet case management deadlines even after they had been extended, the Court deems Corizon's motion for summary judgment unopposed and ripe for consideration. Given the remaining Defendants do not oppose an extension of the deadlines, the Court will vacate the amended case management and scheduling order (Doc. 94) and deny the officers' motion for summary judgment (Doc. 107) as moot.

## II. Plaintiff's Allegations

Plaintiff is proceeding on a fourth amended complaint (Doc. 75; FAC). His claims arise out of an incident that occurred on April 30, 2015, at the work

---

[2] Mr. Gregory consistently has failed to comply with applicable Rules and Court Orders, and some of his motions have been stricken for that reason. See Orders (Docs. 97, 100, 103, 111, 119). As of the date of the status conference, Mr. Gregory admittedly still had not familiarized himself with the Court's Local Rules, despite having been ordered to do so in February 2021. See Order (Doc. 97).

camp at Baker Correctional Center (Baker CI). See FAC ¶¶ 32, 72. According to Plaintiff, up to twenty-two other inmates who were associated with a prison gang called the "Cutthroats" were impermissibly granted access to Plaintiff's housing unit where they beat Plaintiff unconscious in retribution for falling behind on extortion payments demanded by the head of the Cutthroats, "the Terrorizer." Id. ¶¶ 43-45, 48, 62, 65-67, 72-74. Plaintiff alleges corrections officers and the warden could see the attack but did nothing to stop it. Id. ¶¶ 75-78. He asserts Corizon was deliberately indifferent to his need for medical care, not only while he was housed at Baker CI but at other correctional institutions as well. Id. ¶¶ 105-15. Plaintiff alleges Corizon has a custom or policy of "provid[ing] [in]adequate treatment and services to prisoners" in the care and custody of the Florida Department of Corrections (FDOC). Id. ¶ 132, 173.

## III. Motion for Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting

5

Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV. Analysis

Plaintiff's sole claim against Corizon is for deliberate indifference to his serious medical needs under the Eighth Amendment (count three of the FAC). Deliberate indifference to an inmate's serious medical needs constitutes the unnecessary and wanton infliction of pain, which the Eighth Amendment proscribes. Estelle v. Gamble, 429 U.S. 97, 104 (1976). See also Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.").

However, disputes regarding the adequacy of medical care a prisoner has received, including diagnostic testing, sound in tort law. Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985). Consequently, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize

[tort] claims." Id. (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (1st Cir. 1981) (alteration in original)). "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle, 429 U.S. at 107).

When a prisoner complains the medical treatment he received constitutes cruel and unusual punishment, he must demonstrate the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). See also Owens v. Sec'y of Fla. Dep't of Corr., 812 F. App'x 861, 869 (11th Cir. 2020) (per curiam) (affirming the district court's grant of summary judgment in favor of a prison doctor who declined to order an x-ray, because the doctor's medical judgment, "even if it were incorrect or in conflict with another doctor's medical judgment," was not a constitutional violation).

Corizon documents in its motion for summary judgment that Plaintiff received medical attention on the day of the incident—he was transferred to

Shands by helicopter—and extensive follow-up care, both at Baker CI and other FDOC institutions. See Corizon Motion at 26-27. Corizon's expert, Dr. Alfred Joshua, offers an affidavit (Doc. 105-1) and a report (Doc. 105-14; Expert Report) in which he comprehensively summarizes the medical treatment Plaintiff received on the day of the incident and in the weeks and months following. See Expert Report at 7-18.[3]

Dr. Joshua concludes Plaintiff "was afforded extensive clinical oversight, delivery of various healthcare services, multiple routine specialist appointments, surgical repair, medications, and orthotics which would likely not have been coordinated to the extent in the community as it was done in the [FDOC] under Corizon's medical oversight." Id. at 19. He explains that after Plaintiff was released from the hospital the day after the incident, he received extensive routine and specialized treatment:

> Over the course of the next several months, Mr. Cooper received the attention of various specialists which included a Neurologist, Neurosurgeon, Physical Therapist, Ophthalmologist, Optometrist, and Head and Neck Specialists for his various injuries. These specialists do not include the routine care he received

---

[3] Corizon submitted over 2,000 pages of medical records with its motion for summary judgment (Docs. 105-3 through 105-13; Motion Exs. 3-13). Some of the medical records document a prior injury to Plaintiff's lower extremities. Plaintiff has a history of multiple gunshot wounds to his left leg, which caused balance issues and weakness. See Motion Ex. 3 at 7; Motion Ex. 12 at 121. Because of the length of the records, the Court cites primarily Dr. Joshua's summary and report, but the Court has reviewed all records submitted.

9

> from the medical providers, admissions to the medical infirmary unit, and nursing staff services while he was at Baker [CI] and Taylor Correctional facility. The care was extended out for many years in the case of the Neurologist and Physical Therapist.

Id. In addition to seeing specialists and receiving routine care, Plaintiff underwent numerous diagnostic tests including CT scans, x-rays, MRIs and EMGs. Id. Additionally, Plaintiff received surgery to repair a nasal fracture and was prescribed multiple medications. Id. at 20. Dr. Joshua states his opinion as follows: "Based on the extensive medical records and level of clinical attention Mr. Cooper received, it is my opinion that there is no basis for any allegations of Corizon for failing to deliver adequate medical care for Mr. Cooper." Id. at 19.

When deposed, Plaintiff conceded he had "gotten all sorts of medical care while [he was] in the custody of the [FDOC]," including hospital visits, prison infirmary stays, physical therapy, surgery, medications (Neurontin, Tylenol, Ibuprofen, Naproxen, Decadron, Toradol, and Baclofen), devices to assist with walking,[4] and appointments with specialists, such as eye doctors and

---

[4] Shortly after the incident, Plaintiff started complaining of numbness in his legs and an inability to walk. See Expert Report at 9, 11, 13. On September 14, 2015, a neurosurgeon at Memorial Hospital Jacksonville diagnosed Plaintiff with paraplegia but concluded "no surgical intervention . . . could help him." Id. at 17. Prison nurses suggested Plaintiff may have been exaggerating the extent of the weakness in his legs. For instance, a nurse noted Plaintiff was seen changing positions in his bed with his legs following independently in a fluid motion, and he positioned his "legs independently in bent knee position" six times. See Expert Report

neurosurgeons. See Pl. Dep. at 109-14. He also acknowledged he was "immediately sent out to the hospital for medical care" when prison doctors were not able to care for him at the facility. Id. at 116.

The only deficiency in medical care Plaintiff attributed to Corizon providers was that he was forced to wait "a whole 24 hours to see a doctor" when he was released from Shands the day after the incident. Id. at 115. During that 24 hours, Plaintiff experienced an inability to control his bladder, but he admitted he was in the prison infirmary and nurses helped clean him. Id. He was not ignored.

Upon review and viewing the evidence in the light most favorable to Plaintiff, the Court finds Corizon has carried its burden on summary judgment. More specifically, Corizon demonstrates by reference to the record that there are no genuine issues of material fact to be determined at trial. See Clark, 929 F.2d at 608. The evidence shows, and Plaintiff acknowledged at deposition, that Plaintiff received immediate and continuing medical care for the injuries he sustained at the hands of other inmates on April 30, 2015.

---

at 17-18; Motion Ex. 3 at 163. A few days later, a different nurse saw Plaintiff "move his left leg without using his hands." See Expert Report at 18; Motion Ex. 3 at 164. Plaintiff was released from prison on March 2, 2018. See FDOC offender information search, available at http://www.dc.state.fl.us/OffenderSearch/Search.aspx (last visited July 12, 2021). Plaintiff testified at his deposition (Doc. 108-1; Pl. Dep.) that he can now walk, and he drives. See Pl. Dep. at 109.

Stated differently, there is no evidence showing Corizon knew Plaintiff needed medical care but refused to provide or delayed providing it. See Ancata, 769 F.2d at 704 (summarizing the ways in which a medical provider exhibits deliberate indifference). On the contrary, the records show Plaintiff received extensive medical care for the injuries he sustained on April 30, 2015, and there is no evidence suggesting that care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris, 941 F.2d at 1505. Plaintiff's subjective belief that prison doctors should have evaluated him at designated intervals or prescribed different or more medications "is not an appropriate basis for grounding liability under the Eighth Amendment." See Adams, 61 F.3d at 1545.

Plaintiff offers no evidence in opposition to the motion, and he may not rely on the unsubstantiated allegations in his complaint.[5] See Celotex Corp. v.

---

[5] The Court reiterates that Plaintiff was afforded ample opportunity to respond to Corizon's motion. Not only do the Local Rules provide a motion for summary judgment may be treated as unopposed if the non-movant does not respond, see M.D. Fla. R. 3.01(c), the Court explicitly informed Plaintiff's counsel that, absent agreement from all parties that the deadlines should be extended, his failure to respond by May 20, 2021, will result in the motions for summary judgment being treated as unopposed, see Order (Doc. 111). Additionally, the Court's summary judgment notice (Doc. 106) provides the same caution. That notice provides as follows, as to any filed motions for summary judgment:

> (1) failing to respond to these motion(s) will indicate that the motion(s) are not opposed; (2) all material facts asserted by the movant in the motion(s) will be considered

12

Catrett, 477 U.S. 317, 324 ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). As such, Corizon's motion for summary judgment is due to be granted.

Accordingly, it is now

**ORDERED:**

1. Corizon's motion for summary judgment (Doc. 105) is **GRANTED**. Judgment in favor of Corizon will be withheld pending adjudication of the action as a whole. See Fed. R. Civ. P. 54.

2. Defendants Massee, Sailee, Saylor, Bickerstaff, Burnett, Guitherman, Phillips, Stephen, and Powell's motion for summary judgment (Doc. 107) is **DENIED as moot**.

3. Plaintiff's motion to extend the deadlines, joined by all Defendants except Corizon (Doc. 113), is **GRANTED** to the extent the Court **vacates** the amended case management and scheduling order (Doc. 94).

---

to be admitted by you unless controverted by proper evidentiary materials (counter-affidavits, depositions, exhibits, etc.) filed by you; and (3) you may not rely solely on the allegations of the issue pleadings (e.g., complaint, answer, etc.) in opposing these motion(s).

4. If Plaintiff's counsel intends to withdraw, he must file a **proper** motion no later than **August 16, 2021**.

5. If Plaintiff's counsel does not move to withdraw from the case, he and counsel for the remaining Defendants shall submit a joint proposed case management report by **August 16, 2021**, with reasonable deadlines for the completion of discovery, disclosure of expert reports, mediation, and the filing of dispositive motions, such that this case can be tried by February 2022.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of July 2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record